UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
FILE No. 5:23-ct-03047-FL

| | |
|---|---|
| SAMUEL CLEMENT WENDT, | ) |
| Plaintiff, | ) **MEMORANDUM OF LAW IN** |
| v. | ) **SUPPORT OF DEFENDANTS'** |
| | ) **MOTION TO DISMISS** |
| JAMIE BULLARD, *et al.*, | ) |
| Defendants. | ) |

NOW COME Defendants Jamie Bullard, Raymond Bailey, Marcus Hovis, Kimberly Grande and George Baysden (hereinafter "Moving Defendants"), by and through undersigned counsel, and provides this Memorandum Of Law In Support Of Defendants' Motion To Dismiss.

## STATEMENT OF THE CASE

On February 15, 2023, *pro se* Plaintiff, an incarcerated offender, filed this action under 42 U.S.C. § 1983 alleging violations of his religious rights, under the First and Fourteenth Amendments while at Tabor Correctional Institution ("Tabor CI"). [D.E. 1]

On June 8, 2023, Plaintiff filed his Amended Complaint, alleging the same violations. [D.E. 9] On July 31, 2023, the Court completed its frivolity review of the Amended Complaint, allowing Plaintiff's claims to proceed against Moving Defendants. [D.E. 10] On the same date, Requests for Waiver of Service were filed for Moving Defendants. [D.E. 11]

On September 29, 2023, Waivers of Service were returned executed for Kimberly

Grande, Jamie Bullard, Marcus Hovis and Raymond Bailey, making their answer or motion under Rule 12 due on November 28, 2023. [D.E. 13]

Also on September 29, 2023, the Court issued a Summons as to Defendant Baysden. [D.E. 15] On October 11, 2023, the Summons for Defendant Baysden was returned executed, making his answer due on October 28, 2023. [D.E. 16] On October 28, 2023, Defendant Baysden filed a Motion For Extension of Time to respond to Plaintiff's Complaint to allow the parties to submit one responsive pleading in the interest of judicial economy. [D.E. 17]. Defendant Baysden filed a Corrected Motion on October 30, 2023. [D.E. 20]

On October 30, 2023, Plaintiff filed his Affidavit And Declaration For Entry Of Default. [D.E. 18]

On October 31, 2023, this Court granted Defendant Baysden's Motion For Extension Of Time To Respond To The Complaint, making his deadline to respond the same as the other Moving Defendants' deadline, November 28, 2023. [D.E. 21]

On November 20, 2023, Moving Defendants responded in opposition to Plaintiff's Motion For Default. [D.E. 23] That motion remains pending. Moving Defendants now timely file their Rule 12 response to the Amended Complaint.

## STATEMENT OF THE RELEVANT FACTS

On March 11, 2020, the World Health Organization (WHO) declared COVID-19 a global pandemic. On March 13, 2020, the President of the United States declared COVID-

19 a National Emergency. On March 10, 2020, the Governor declared a State of Emergency for North Carolina due to the COVID-19 pandemic.

According to Plaintiff's Amended Complaint, Defendant Hovis was the Chaplain at Tabor CI from "October 2020 to approximately July/August 2022," during which time, he did not conduct group worship services. [D.E. 9, p. 5]

Defendant Kimberly Grande is the Executive Director of the Inmate Grievance Review Board. Plaintiff alleged that Defendant Grande responded to his grievance with "be patient." [D.E. 9, p. 7]

By December of 2022, group bible study classes were available for offenders at Tabor CI to attend. [D.E. 9, p. 7] Plaintiff attended bible study on December 6, 2022, and alleged that after it was over, Defendant Bailey told Plaintiff and two (2) other close custody offenders that close custody offenders could not attend worship service. [D.E. 9, p. 7] Finally, Defendants Baysden and Bullard were in supervisory roles during the relevant time periods. [D.E. 9, p. 3]

On March 16, 2023, Plaintiff was transferred from Tabor CI to his new housing assignment at Piedmont Correctional Institution. [D.E. 9, p. 9; *see also* D.E. 3]

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Such a motion should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570

(2007). The allegations must rise above a "speculative level," and instead, rise to a "plausible" level. *Id.* at 555 & 570. As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Courts are required to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). However, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* The Court is allowed to consider certain types of extrinsic evidence, including "official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006) (citing, in part, *Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting court to take judicial notice of public documents, such as court records, even when the documents are neither referred by nor integral to plaintiff's complaint)).

While courts construe *pro se* complaints liberally, a court should not fashion Plaintiff's arguments for him. *See Small v. Endicott,* 998 F.2d 411 (7th Cir. 1993).

Likewise, a court should not "conjure up questions never squarely presented." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). The Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993). "Accordingly, pro se litigants are not entitled to a general dispensation from the rules of procedure." *Hewitt v. Hutchins*, 309 F. Supp. 2d 743, 748–49 (M.D.N.C. 2004) (internal quotations marks omitted).

## **ARGUMENT**

### I. DUE TO PLAINTIFF'S TRANSFER FROM TABOR CI, HIS CLAIM FOR INJUNCTIVE RELIEF AGAINST DEFENDANTS IS MOOT AND MUST BE DISMISSED.

Based upon the Court's ruling in its frivolity order, Plaintiff's claim against Moving Defendants in their official capacities is based upon the risk of ongoing violations of Plaintiff's religious rights. *See* [D.E. 10, p. 3]. The only relief requested relevant to that claim is the injunctive relief that "[Moving d]efendants allow Catholic or Christian inmates to meet for religious services without an outside volunteer . . ." [D.E. 10, p. 3]. Regarding injunctive relief in prisoner suits, the Prison Litigation Reform Act ("PLRA") provides in part:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give

> substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. 3626(a)(1)(A) (2019).

Further, "[a] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). When requested injunctive or declaratory relief is no longer necessary, "[t]he Fourth Circuit has consistently held that when a prisoner is no longer subject to the alleged unconstitutional condition, the claim is moot." *Wright v. Bennett*, 2010 U.S. Dist. LEXIS 79345 at *6 (E.D.N.C. 4 August 2010) (citing *Rendelman v. Rouse*, 569 F.3d 182, 186-188 (4th Cir. 2009)). Generally, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief. *Rendelman v. Rouse*, 569 F.3d at 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir.2007); *see also Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991) (transfer rendered moot a prisoner's claims for injunctive and declaratory relief, but not claims for damages); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n. 1 (4th Cir.1986) (same)).

Here, Plaintiff was transferred from Tabor CI on March 16, 2023 and is no longer subject to any alleged discrimination by Defendants. [D.E. 9, p. 9] (filed over two (2) months after Plaintiff's transfer, without any additional allegations of religious violations). This Court has already dismissed the claims against the North Carolina Department of Adult Correction. [D.E. 10, p. 3] Thus, Plaintiff cannot sustain a claim entitling him to any

declaratory or injunctive relief and, due to his transfer, his claims are now moot. Accordingly, any injunctive or declaratory relief this Court could conceivably award could not benefit Plaintiff. Plaintiff's claims are moot and should therefore be dismissed with prejudice as to Moving Defendants' official and individual capacities.

## II. PLAINTIFF HAS FAILED TO ALLEGE FACTS SUFFICIENT TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED IN THIS MATTER.

In addition to his moot claim for injunctive and declaratory relief, Plaintiff's claims for damages should be dismissed because Plaintiff's Complaint does not allege sufficient facts that Defendants violated his religious rights. "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Additionally, because the doctrine of respondeat superior does not apply to § 1983 claims, a §1983 plaintiff must plausibly allege the personal involvement of a defendant. *See e.g., Iqbal*, 556 U.S. 662, 678-83 (2009); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-93 (1978) ("Personal capacity suits impose personal liability on a government official <u>for actions he takes</u> under color of state law." (emphasis added)); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). "Liability will only lie where it is affirmatively shown that the official charged <u>acted personally</u> in the deprivation of plaintiffs' rights. The doctrine of *respondeat superior* has no application under this section." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (emphasis added).

**A. Plaintiff has not alleged sufficient facts to state a plausible claim that Defendants Baysden and Bullard were personally involved in the alleged deprivation or denial of Plaintiff's constitutional rights.**

Plaintiff's only mention of Defendant Baysden is a showing that he was the immediate supervisor of Defendant Hovis "from October 2020 – Approx March/April 2022." [D.E. 9, p. 5] Plaintiff further alleges that during the time Defendant Baysden was Defendant Hovis' supervisor, Defendant Baysden "failed to use his authority to require Hovis to resume services." [D.E. 9, p. 6] Plaintiff's erroneous assumption of supervisory relationship between Defendants Baysden and Hovis is of no consequence because Plaintiff has not alleged that Defendant Baysden made any action to deprive Plaintiff of his religious rights, ordered anyone to deprive Plaintiff of his religious rights or had knowledge of Plaintiff's allegations.

Similarly, Plaintiff's Amended Complaint only mentions Defendant Bullard to discuss him taking no action in this matter. [D.E. 9, p. 10] Though Plaintiff makes a conclusory assumption that Defendant Bullard knew or should have known that religious services were not being conducted, he makes no allegation that Defendant Bullard acted in any way to deprive Plaintiff of his religious rights or ordered anyone else to act in such a way. Plaintiff's Amended Complaint relies solely on the doctrine of respondeat superior in naming Defendants Baysden and Bullard in this matter. Because, respondeat superior is inapplicable to section 1983, and Plaintiff's claims against Defendants Baysden and Bullard are implausible, Plaintiff has failed to state a claim against Defendants Baysden and Bullard.

## B.   PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS TO STATE A RLUIPA CLAIM.

"As an initial matter, a prisoner bringing a cause of action under RLUIPA is not entitled to money damages against state defendants in either their individual or official capacities. Thus, [a prisoner] is limited to seeking only injunctive relief under RLUIPA." *Dieppa v. Clarke*, 2019 WL 2997846 at *5 (W.D. Va. July 9, 2019) (citing *Sossamon v. Texas*, 563 U.S. 277, 293 (2011)). As discussed above, Defendants assert that Plaintiff's claims for injunctive relief, including those under RLUIPA, are moot and therefore, should be dismissed.

Alternatively, Plaintiff's Amended Complaint does not state a claim under RLUIPA because there are no facts alleging a substantial burden on Plaintiff's religious exercise. "The inmate bears the initial burden to demonstrate that the prison's policy exacts a substantial burden on religious exercise." *Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015). Under the RLUIPA, "substantial burden" is defined as "putting substantial pressure on an adherent to modify his behavior and violate his beliefs or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." *Lovelace*, 472 F.3d at 187. "Government action does not create a substantial burden if it makes the religious exercise more expensive or difficult, as long as it does not pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of the religion." *Dieppa*, 2019 WL 2997846 at *6 (citing *Al-Azim v. Everett*, 2017 WL 1097219 at *3 (E.D. Va. March 3, 2017)).

In this case, Plaintiff has never alleged that any Defendant pressured him to violate his religious beliefs or abandon one of the precepts of his religion. Instead, he alleges that Defendant Hovis did not conduct or allow anyone else to conduct group worship services. [D.E. 9, p. 5]. There is no allegation that anyone attempted to prevent Plaintiff from practicing his religion individually. Further, there is no allegation that group worship services would be permanently discontinued. Plaintiff admits in his Amended Complaint that Defendants Grande and Bailey told Plaintiff to "be patient" in response to Plaintiff's grievance. [D.E. 9, p. 7] Even if Plaintiff's allegations are viewed in the light most favorable to Plaintiff, "be patient" does not suggest pressure by Moving Defendants to alter or abandon his beliefs or an intent to otherwise deprive Plaintiff of his rights. As such, any RLUIPA claim should be dismissed as to Moving Defendants.

**C.     PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS TO STATE A FREE EXERCISE CLAIM.**

The First Amendment, applicable to the states through the Fourteenth Amendment, declares that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I; *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). The Amendment's Free Exercise Clause prohibits "policies that impose a substantial burden on a prisoner's right to practice his religion." *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014) (citing *Lovelace*, 472 F.3d at 187). The Fourth Circuit has made clear that the analysis under RLUIPA is a similar, but more stringent, analysis than that under the First Amendment. *See Lovelace*, 472 F.3d at 186 & 199-200 (held "the First Amendment affords less protection to inmates' free exercise rights than does

RLUIPA). For the same reasons outlined against Plaintiff's RLUIPA claim, Defendants did not violate Plaintiff's First Amendment rights. Therefore, Moving Defendants should also be entitled to dismissal on Plaintiff's First Amendment claims.

### D. PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS TO STATE AN EQUAL PROTECTION CLAIM.

Plaintiff has not stated sufficient facts for an equal protection claim because, according to the Amended Complaint, all similarly situated offenders were treated the same. "'The Equal Protection Clause generally requires the government to treat similarly situated people alike.' To show that his equal protection rights were violated plaintiff must demonstrate that he was treated differently than similarly situated inmates and the discrimination was intentional or purposeful." Winder v. Maynard, 2 F. Supp. 3d 709, 716 (D. Md.), aff'd, 583 F. App'x 286 (4th Cir. 2014) (citing *Williams v. Bitner*, 307 Fed. Appx. 609, 611 (3rd Cir.2009) and *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Accordingly, "while a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, prisoner's claims under the equal protection clause ... must still be analyzed in light of the special security and management concerns in the prison system." *Morrison v. Garraghty*, 239 F.3d 648, 655 (4th Cir.2001), (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence.")

Here, Plaintiff's Amended Complaint makes clear that similarly situated offenders were treated equally during the relevant time frames. Plaintiff complains that Defendant Hovis did not hold group worship services from October 2020 to July or August 2022. [D.E. 9, pp. 5, 9] There is no allegation that this was specific to Plaintiff or his religious group. Plaintiff complains that outside "ministers/clergy" were not allowed to hold religious meetings. [D.E. 9, p. 6] There is no allegation that this was specific to Plaintiff or his religious group. Plaintiff complains that he was required to surrender several religious books; however, Plaintiff does not allege that any of the Moving Defendants were involved. [D.E. 9, p. 6] Plaintiff alleges that Defendant Bailey told Plaintiff and two other close custody offenders that close custody offenders could not attend services; as such, Plaintiff was treated equally to the other similarly situated offenders, those in close custody. [D.E. 9, p. 7] Finally, Plaintiff alleges that he was locked in his cell when group services were called on January 2023. Once again, Plaintiff does not allege that any of the Moving Defendants were involved. [D.E. 9, p. 8] Throughout Plaintiff's Amended Complaint, he either describes incidents where he was treated equally to other offenders or where, taking the allegations in the light most favorable to him, Plaintiff was treated differently, but Moving Defendants were not involved. Therefore, Plaintiff's equal protection claims should be dismissed for Moving Defendants.

### III. ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR PLAINTIFF'S INDIVIDUAL CAPACITY CLAIMS

Defendants should receive qualified immunity for Plaintiff's individual capacity claims because Plaintiff has failed to state claims showing that Moving Defendants violated

any of his clearly established constitutional rights. The doctrine of qualified immunity protects government officials from actions for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, (1985)). "[I]t is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526.

"The test for qualified immunity is a two-pronged inquiry. The court must determine, in no particular order, (1) whether a constitutional right has been violated on the facts alleged and (2) whether the right was clearly established at the time so that it would be clear to an objectively reasonable officer that his conduct violated that right." *Adams v. Parsons*, 2011 WL 1464856 at *4 (S.D. W.Va. April 15, 2011) (citing *Saucier v. Katz,* 533 U.S. 194, 200–02 (2001)).

Qualified immunity protects government officials from "bad guesses in gray areas" and ensures that they are only liable for crossing bright lines. *Maciarello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

Federal courts in North Carolina have routinely granted qualified immunity to prison officials for following a policy enacted by their superiors. *See, e.g., Lewis v. NCDPS*, 2019 WL 177480 at *4 (W.D.N.C. Jan. 11, 2019); *Utt v. Brown*, 2015 WL 5714885 at *6 (E.D.N.C. Sept. 29, 2015) (J. Flanagan); *Brown v. Hathaway*, 2010 WL 4809034 at *2-3 (E.D.N.C. Nov. 18, 2010) (J. Boyle).

In this case, Plaintiff has failed to state claims for the alleged violations of his religious rights. Specifically, the Amended Complaint does not allege that Defendants Baysden and Bullard were involved in any action to deprive Plaintiff of his religious rights. Defendant Grande is mentioned in the Amended Complaint only once to tell Plaintiff to "be patient" in response to his grievance. Defendants Hovis and Bailey treated Plaintiff equally to all similarly situated offenders. Therefore, Defendants should be granted qualified immunity.

## CONCLUSION

Based on the foregoing, Moving Defendants respectfully request this court dismiss Plaintiff's claims for declaratory and injunctive relief as moot against all Moving Defendants in their individual and official capacities; and dismiss the remainder of Plaintiff's claims for damages for Plaintiff's failure to state claims for which relief can be granted.

Respectfully submitted, this the 28th day of November, 2023.

        **JOSHUA H. STEIN**
        **Attorney General**

        /s/ Shelby N. S. Boykin
        Shelby N. S. Boykin
        Assistant Attorney General
        N. C. Department of Justice
        Public Safety Section
        P.O. Box 629
        Raleigh, North Carolina 27602-0629
        Telephone: (919) 716-0444
        Facsimile: (919) 716-6761
        Email: sboykin@ncdoj.gov
        State Bar No. 52404

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system. I also certify that, on this date, I will serve a copy of same upon the Plaintiff, a *non*-CM/ECF participant via first-class regular United States Mail addressed as follows:

> Samuel Clement Wendt
> OPUS No. 1644320
> Piedmont Correctional Institution
> 1245 Camp Road
> Salisbury, NC 28147
> *Pro se Plaintiff*

This the 29th day of November, 2023.

/s/ Shelby N. S. Boykin
Shelby N. S. Boykin
Assistant Attorney General