IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-3047-FL

| | |
|---|---|
| SAMUEL CLEMENT WENDT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| JAMIE BULLARD, RAYMOND ) | |
| BAILEY, CHAPLAIN HOVIS, DEPUTY ) | |
| WARDEN BAYSDEN, and KIMBERLY ) | |
| GRANDE, ) | |
| ) | |
| Defendants.[1] ) | |

This matter is before the court on defendants' motion to dismiss (DE 24) pursuant to Federal Rule of Civil Procedure 12(b)(6), and plaintiff's motions to amend the complaint (DE 32), to file supplemental pleading (DE 31), and for preliminary injunction (DE 36). The motion to dismiss and plaintiff's motions to amend/supplement were briefed fully and in this posture the issues raised are ripe for ruling. For the following reasons, the motion to dismiss is granted in part and denied in part, and plaintiff's motions to amend/supplement are denied without prejudice to raise his new claims in a new action. Plaintiff's motion for preliminary injunction will be dismissed as moot.

---

[1] The court severed the claims of formerly named plaintiffs Brandon S. Goins, David W. Hemrick, Dallas M. Bullock, Reginald Millard, Allen Littlejohn, Lucas Molesky, Trenton Shew, Quintin Taylor, Reginald L. Butler, Corey Moore, Roger L. Taylor, John Doe, and Prince E. Hannah by separate order entered April 6, 2023. In addition, the court dismissed the claims asserted against formerly defendants Mark Barnhill, North Carolina Department of Public Safety, Todd Ishee, Janet Dexter, Clayton Brewer, Glenda Jackson, Unit Manager Brown, Assistant Unit Manger Shaw, Unit Manager Collins, Unit Manager McLaughlin, Wakenda Greene, Brandeshawn Harris, Edward Buffaloe, Eric Carr, John Yonker, and unidentified property owners by separate order entered July 31, 2023.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint on February 15, 2023, asserting constitution and federal statutory claims pursuant to 42 U.S.C. § 1983 on behalf of himself and the formerly named plaintiffs. Following initial review of the action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court dismissed the claims asserted on behalf of other inmates, denied plaintiff's request for permissive joinder with other plaintiffs, and directed plaintiff to file amended complaint particularizing his individual claims. Plaintiff timely complied with the court's order. The court then conducted initial review of the amended complaint, and allowed plaintiff's claims for violations of his First Amendment religious exercise and Establishment Clause rights, and the Fourteenth Amendment Equal Protection Clause, to proceed against defendants in their individual and official capacities. The court dismissed plaintiff's claims against the North Carolina Department of Adult Correction ("DAC") as an entity. The remaining defendants Jamie Bullard, Raymond Bailey, Chaplain Hovis, and deputy warden Baysden are correctional officials at the Tabor Correctional Institution, and defendant Kimberly Grande is the inmate grievance coordinator with the DAC.

Defendants now move to dismiss the remaining claims, arguing that plaintiff's claims for injunctive relief are moot in light of his transfer to a new correctional facility, that he fails to allege plausible claims for relief, and that the claims are barred by qualified immunity. Plaintiff filed comprehensive response in opposition to the motion to dismiss, together with the instant motions to amend or supplement the complaint. In the motions to amend and supplement, plaintiff seeks leave to add new defendants and claims arising after he filed this action, and to supplement the allegations in the operative amended complaint. Defendants responded in opposition to these

motions.

Finally, plaintiff moves for preliminary injunction, requesting that the court direct prison officials to provide him access to religious services compliant with Catholic doctrine, including sacramental wine. The court granted defendants' request to hold in abeyance proceedings on the request for preliminary injunction pending resolution of the instant motion to dismiss.

## STATEMENT OF FACTS

The facts alleged in plaintiff's amended complaint may be summarized as follows. Between October 2020 and March 2023, plaintiff was housed at the Tabor Correctional Institution ("Tabor C.I.") in Tabor City, North Carolina. (See Am. Compl. (DE 9) at 5).[2] Plaintiff is a practicing Catholic and he wishes to participate in formal Holy Mass services, communion, and confession. (See id.). Defendant Hovis was the "chaplain" of the facility, a supervisory position responsible for overseeing inmate religious services. (Id.). From October 2020 through July or August 2022, and in response to the COVID-19 pandemic, defendant Hovis did not perform, or allow others to perform, "any religious services, bible studies, prayer meetings, or group [religious] functions." (Id.). Defendant deputy warden Baysden was Hovis's supervisor, and he "failed to use his authority to require Hovis to resume services." (Id. at 5–6).

In June 2021, defendant Baysden authorized outside volunteers to resume teaching educational classes, but the ban on outside ministers or clergy remained in force. (Id. at 6). During the permitted educational classes, correctional staff allowed inmates designated as both medium and "close" custody to attend classes together. (Id.). Defendant Raymond Bailey

---

[2] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

3

became the deputy warden upon defendant Baysden's retirement, and he continued the practice of allowing close and medium custody inmates to attend the same educational classes, while not permitting any religious services. (Id.). Defendant Bailey also did not direct defendant Hovis to resume religious services, even after the mask mandates related to COVID-19 were lifted. (Id. at 9).

On June 15, 2021, unidentified correctional staff "forced [plaintiff] to surrender several religious books" pursuant to Tabor C.I. policy. (Id. at 6). Plaintiff did not provide further details about this incident or allege that the deprivation of property compromised his ability to practice his religion. (See id.).

Plaintiff spoke with defendant Hovis about the lack of religious programming on December 1, 2021, and Hovis reported that he "could resume [religious] services with [inmate] faith helpers for minority faith groups but not for Christians." (Id.). Defendant Hovis explained that DAC policy "requires outside volunteers to be present for majority faiths, but this is not required for small/minority faith groups." (Id.). Plaintiff contacted a local prison ministries coordinator for Catholic services, who informed him that Tabor C.I. officials were not allowing Catholic ministers or outside volunteers to enter the prison. (Id.). Thus, plaintiff's requests for Catholic services repeatedly were denied. (See id.).

Plaintiff filed an administrative grievance on August 15, 2022, alleging that he "had not been allowed to practice the tenets of his faith since October 2020." (Id. at 7). Nonetheless, defendants Bailey and Kimberly Grande, the inmate grievance administrator, denied the grievance, encouraging plaintiff to "be patient" regarding his requests for religious services. (Id.).

On December 6, 2022, plaintiff attended a non-denominational bible study. (Id.).

4

Defendant Bailey discovered that plaintiff attended the bible study, and informed plaintiff that he was not allowed to attend services due to his status as a "close custody" inmate. (Id.). Subsequently, defendant Bailey ordered that close custody inmates could attend religious services only once per month. (Id.). Close and medium custody inmates, however, continued to attend educational services together on a more frequent basis. (Id.).

Defendant Jamie Bullard was the warden of Tabor C.I. during the relevant time period. (Id. at 10). He "knew or should have known that religious services were not being conducted at [Tabor C.I.]." (Id.). He also "met regularly with [defendants] Hovis, Bailey, and Baysden[,]" but he did not order them to resume religious services. (See id.).

Plaintiff "finally received communion on February 6, 2023." (Id. at 9). However, as of the time he filed the amended complaint, prison officials had not arranged for formal Holy Mass services or confession. (Id.). Plaintiff allegedly suffered anxiety, depression, aggravation of his post-traumatic stress disorder, weight gain, and hypertension due to his inability to practice his religion. (Id. at 8).

**COURT'S DISCUSSION**

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not

5

consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

In addition, when a party is proceeding pro se, pleadings should be "liberally construed" and they are "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Erickson, however, does not undermine the "requirement that a pleading contain more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008).

With respect to plaintiff's motions to amend or supplement the complaint, plaintiff requires leave of court to amend the complaint in these circumstances. See Fed. R. Civ. P. 15(a)(1)-(2). "The court should freely give leave when justice so requires." Id. "In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). A proposed amended complaint should be denied as futile if it "fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011). Finally, a motion to file supplemental pleading pursuant to Federal Rule of Civil Procedure 15(d) is evaluated under the same standard. See Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002).

B. Analysis

    1. Motion to dismiss

The court begins with defendants' motion to dismiss. Defendants first argue that plaintiff's recent transfer to the Piedmont Correctional Institution moots any claims for injunctive or declaratory relief. As plaintiff acknowledges, (DE 32 at 2),[3] "as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009); Incumaa v. Ozmint, 507 F.3d 281, 286–87 (4th Cir. 2007).

Plaintiff requests an injunction "ordering [the DAC] to revise its religious policy concerning outside volunteers to better reflect the Constitution." (DE 9 at 11). To the extent this request should be construed broadly to seek injunctive or declaratory relief concerning application of this policy to plaintiff's requests for religious services at the Tabor C.I., the court agrees that any such claims are now moot in light of the transfer. See Rendelman, 569 F.3d at 186. Plaintiff's argument that these claims are not moot as to defendant Grande is without merit. The mootness determination is based on whether plaintiff seeks to enjoin conduct or declare the rights of parties at a prior correctional institution, and not the identity of the defendants. See id. Finally, plaintiff's complaint suggests that he would not be subject to this policy again even if he is transferred back to Tabor C.I., where he has been promoted to medium custody status, the COVID-19 restrictions have been removed, and a community volunteer is available. (See DE 9 at 5–10).

Plaintiff's request for injunction seeking revision of a broadly applicable DAC policy also must be dismissed. Plaintiff does not allege that the defendants were responsible for promulgating a systemwide DAC policy. Nor can the court draw such an inference from the

---

[3] Plaintiff claims that his transfer does not moot claims for declaratory relief, but that assertion is incorrect for the reasons explained herein.

complaint, in which plaintiff asserts claims against the warden and subordinate officials at the Tabor C.I., and the administrative grievance coordinator. Plaintiff cannot obtain injunctive relief against defendants in their official capacities if they were not responsible for the challenged policy. See Lovelace v. Lee, 472 F.3d 174, 193–94 (4th Cir. 2006) (dismissing claim for injunctive relief asserted against defendant in his official capacity where "it was Warden Lee, not Assistant Warden Shinault, who issued the challenged policy as an official act of [the state]."). Accordingly, plaintiff's claims for injunctive or declaratory relief are moot or fail on the merits, and defendants' motion to dismiss is granted as to these claims.

Next, with respect to plaintiff's remaining claims for damages under the First and Fourteenth Amendments, defendants argue that plaintiff has failed to allege plausible claims for relief. The court previously determined that plaintiff's claims survive initial review under 28 U.S.C. § 1915(e)(2)(B)(ii), which includes review for whether the complaint states a claim on which relief may be granted. (July 31, 2023, order (DE 10); see Pitts v. South Carolina, 65 F.4th 141, 144 (4th Cir. 2023). Defendants' arguments essentially seek reconsideration of that order.

In order to state a free exercise claim under the First Amendment, plaintiff must allege: 1) "that he holds a sincere religious belief"; and 2) "that his religious practice has been substantially burdened by the prison policy or practice." Firewalker-Fields v. Lee, 58 F.4th 104, 114–15 (4th Cir. 2023). "A substantial burden either puts pressure on a person to change his religious beliefs or puts that person to a choice between abandoning his religion or following his beliefs and losing some government benefit." Id.; Lovelace, 472 F.3d at 187. And even if plaintiff can establish these two elements, the restrictions will be upheld unless plaintiff can show that they are "not

8

reasonably related to legitimate penological interests" as evaluated under the four-factor test in Turner v. Safley, 482 U.S. 78, 89 (1987). Firewalker-Fields, 58 F.4th at 115.

Here, plaintiff alleges that he was denied Catholic services and the ability to practice other central tenets of his faith for years at the Tabor C.I. Defendants have not questioned the sincerity of his belief. Instead, defendants argue the allegations do not show an intentional deprivation of plaintiff's rights where the restrictions were based on the COVID-19 pandemic, and the services were allowed to resume after the pandemic restrictions were lifted. But these arguments require analysis of evidence extrinsic to the complaint, and they are thus more appropriate for the summary judgment or trial stages of the case. See Firewalker-Fields, 58 F.4th at 115–21 (evaluating similar claim following discovery). Defendants also do not attempt to justify the policy in light of the Turner factors, which typically requires consideration of evidence extrinsic to the complaint. See id.; see also Ortiz v. Downey, 561 F.3d 664, 669–70 (7th Cir. 2009) (discouraging dismissal "at [the] pre-discovery stage of the proceedings" when the claim requires analysis of the Turner factors).

Focusing solely on the allegations in the complaint, plaintiff alleges defendants repeatedly denied his requests for Catholic services while allowing congregate educational services or minority faiths to conduct services. (See DE 9 at 5–10). These allegations, broadly construed, suggest defendants' actions were intentional and that the proffered justification would not justify a complete ban on plaintiff's religious practices. See Haze v. Harrison, 961 F.3d 654, 659 (4th Cir. 2020) (repeated destruction of inmate mail created triable issue of fact on whether the conduct "constituted a deliberate pattern or practice"). Finally, defendants' conduct essentially requires

plaintiff to "abandon" his religious practices in light of his incarceration, and he has therefore alleged the substantial burden element. Firewalker-Fields, 58 F.4th at 114.

To the extent defendants argue plaintiff cannot show substantial burden because he can practice his religious faith "individually," that argument is without merit. The "substantial burden inquiry asks whether the government has substantially burdened religious exercise . . . not whether the . . . claimant is able to engage in other forms of religious exercise." See Holt v. Hobbs, 574 U.S. 352, 361–62 (2015); Greenhill v. Clarke, 944 F.3d 243, 250 (4th Cir. 2019) (explaining substantial burden test is the same under both the Religious Land Use and Institutionalized Persons Act, which was at issue in Holt, and the First Amendment). Thus, plaintiff plausibly alleges a claim for violation of his free exercise rights under the First Amendment.

Plaintiff also alleges an equal protection claim pursuant to the Fourteenth Amendment. The Fourteenth Amendment's Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Generally, in order to establish an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. If a plaintiff makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

10

Plaintiff alleges defendants permitted "minority" faith groups to conduct religious services with inmate helpers while denying that same opportunity to Catholic inmates. (DE 9 at 6). Plaintiff repeatedly complained about this issue, but defendants failed to modify the policy or otherwise allow Catholic services. (Id. at 6–7). While plaintiff does not allege detailed facts supporting a claim of intentional discrimination, these allegations, broadly construed, are sufficient to state a claim under the standard set forth above. See Haze, 961 F.3d at 659; see also Erickson, 551 U.S. at 94 (emphasizing that when a party is proceeding pro se the allegations should be "liberally construed"). And to the extent defendants argue that plaintiff was not similarly situated to the other inmates because he was assigned "close custody" status, plaintiff alleges that both medium and close custody inmates were allowed to attend educational programs together, but not religious ones. (See DE 9 at 7). Defendants do not account for this allegation in the motion to dismiss or otherwise explain why plaintiff's custody status differentiates him from the other inmates who were allowed to participate in religious services. Accordingly, the motion to dismiss is denied as to this claim.

As plaintiff notes, defendants do not address the First Amendment Establishment Clause claim the court allowed to proceed in the July 31 order. (DE 10). The court therefore adheres to its prior determination that plaintiff alleged a plausible claim for relief under the Establishment Clause. (See id.).

Defendants next argue that plaintiff fails to allege defendants Baysden and Bullard's personal involvement in the alleged deprivations.[4] Plaintiff, however, plausibly alleges

---

4     Defendants' argument in this part is limited to the allegations against Baysden and Bullard, and the court therefore does not address this issue as to the remaining defendants.

11

defendants Baysden and Bullard were aware of the denial of religious services but failed to intervene. (DE 9 at 5–10). At this stage, the court will allow these claims to proceed on a theory of bystander or supervisory liability. See Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 417 (4th Cir. 2017) (describing standard for bystander liability); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (standard for supervisory liability claim). Moreover, plaintiff also alleges defendant Baysden "failed to allow outside ministers/clergy to resume religious instruction or meetings, suggesting his direct involvement in the free exercise claim. (DE 9 at 6). Defendants' reliance on technical arguments that plaintiff fails to allege directly these defendants' personal knowledge is misplaced. Plaintiff's allegations, read broadly, permit the reasonable inference that each of these defendants knew of the violations and failed to take any action. (See DE 9 at 5–10); Nemet Chevrolet, 591 F.3d at 255 (discussing Rule 12(b)(6) standard).

Turning next to defendants' argument that plaintiff fails to allege a plausible claim under the Religious Land Use and Institutional Persons Act ("RLUIPA"), the court does not read plaintiff's complaint as asserting such a claim. (See also Pl's Resp. (DE 32-1) at 11 (plaintiff stating that he "intentionally did not place a RLUIPA claim" in the complaint but then stating he will not "abandon" the claim)). In any event, plaintiff's transfer moots his claims for injunctive or declaratory relief for the reasons explained above, and plaintiff cannot obtain damages under RLUIPA in the context presented here. See Firewalker-Fields, 58 F.4th at 113–14; Rendelman, 569 F.3d at 186, 189; Gentry v. Robinson, 837 F. App'x 952, 957 (4th Cir. 2020). Accordingly, any RLUIPA claim is dismissed without prejudice.[5]

---

[5] As explained further below, plaintiff can assert RLUIPA claim based on conduct occurring at his new correctional facility in a new action filed in the Middle District of North Carolina.

12

Defendants also note that plaintiff does not allege that any of the named defendants were responsible for the confiscation of his religious books. Plaintiff agrees that he failed to name the correct defendant with respect to this allegation, and requests leave to amend the complaint in order to assert this claim against a new defendant. (DE 32 at 3). But regardless of the identity of the defendant, this allegation cannot serve as a standalone claim for denial of religious exercise where plaintiff fails to allege facts showing that the confiscation of the books placed a substantial burden on his religious exercise. See Firewalker-Fields v. Lee, 58 F.4th at 114. Accordingly, the court does not construe this allegation as stating a separate claim for relief, and plaintiff's request for leave to amend is denied.

Finally, defendants assert they are entitled to qualified immunity as to plaintiff's claims for damages. Qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Iko v. Shreve, 535 F.3d 225, 237 (4th Cir. 2008). The qualified immunity analysis proceeds in two steps, which the court "may address in whichever sequence will best facilitate the fair and efficient disposition of the case." Pfaller v. Amonette, 55 F.4th 436, 444 (4th Cir. 2022). First, the plaintiff must show a violation of a constitutional right. Id.; Stanton v. Elliot, 25 F.4th 227, 233 (4th Cir. 2022). Second, defendants bear the burden of showing the right at issue was not "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Stanton, 25 F.4th at 233.

Defendants raise the qualified immunity defense based upon the first step, arguing that plaintiff has failed to allege a violation of his constitutional rights. The court disagrees for the

13

reasons explained above. And defendants do not address whether the constitutional rights at issue were clearly established, so the court does not address the second prong at this juncture. In sum, the court defers ruling on qualified immunity pending further factual development and legal argument from the parties.

    2.      Motions to amend or supplement

The court now turns to plaintiff's motions to amend or supplement the complaint. As the court previously explained to plaintiff, he cannot join multiple defendants in a single action unless he shows that "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "The 'transaction or occurrence test' of the rule . . . 'permit[s] all reasonably related claims for relief by or against different parties to be tried in a single proceeding.'" Saval v. BL Ltd., 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974)). And where plaintiff is incarcerated, "[u]nrelated claims against different defendants belong in different suits [under Rule 20 and] to ensure that prisoners pay the required filing fees [pursuant to 28 U.S.C. § 1915(b)]." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Here, the claims in the motions to amend and supplement for the most part occurred at a different prison, are alleged against defendants employed at that facility, and they involve distinct factual issues. For example, plaintiff alleges he was denied Catholic services at the Piedmont Correctional Institution ("Piedmont C.I.") because the chaplain determined he could attend non-denominational Christian services as a substitute. (Mot. to Suppl. (DE 31) at 4). That is a

14

different claim than the one at issue in this case, which involves wholesale denial of services during the pandemic. Indeed, plaintiff eventually received Catholic services at Tabor C.I. while he alleges that officials at the Piedmont C.I. are denying his requests for such services. (Compare id. with Complaint (DE 9) at 9). The only similarity between the claims is that plaintiff is asking the DAC to revise its policy to allow Catholics to use inmate faith helpers as opposed to outside volunteers to conduct religious services. But as explained above, that request for injunctive relief is dismissed as to this action. Accordingly, these claims are not reasonably related, and plaintiff cannot add the newly proposed defendants by way of a motion to amend or to supplement. See Saval, 710 F.2d at 1031; George, 507 F.3d at 607; see also Katyle, 637 F.3d at 471.

Based on the foregoing, the court denies as futile plaintiff's motions to amend the complaint. As plaintiff recognizes, the proper venue for these new claims arising at the Piedmont C.I. is the United States District Court for the Middle District of North Carolina because the claims arose in that district and most of the defendants are in that district. See 28 U.S.C. § 1391(b). Plaintiff therefore can file a new action in that district asserting these claims. And denial of leave to amend in this action does not prejudice plaintiff because he is well within the three-year statute of limitations applicable to his newly raised § 1983 claims, and the four-year statute of limitations for RLUIPA claims. See Tommy Davis Constr., Inc. v. Cape Fear Public Utility Auth., 807 F.3d 62, 66–67 (4th Cir. 2015); Al-Amin v. Shear, 325 F. App'x 190, 193 (4th Cir. 2000); 28 U.S.C. § 1658.

Plaintiff alleges one new claim for "retaliatory transfer" that may have occurred in this district. But that claim also involves distinct factual issues related to plaintiff's mental health issues, custody status, and alleged improper transfer after filing administrative grievance. (See

15

Mot. to Suppl. (DE 31) at 1–3). Accordingly, this claim also must be brought in a separate action for the reasons explained above. To the extent this claim arose in the Eastern District of North Carolina, plaintiff can bring a separate action asserting same in this district. Plaintiff should attempt to identify the defendants who allegedly violated his rights before bringing a new action. See Schiff v. Kennedy, 691 F.2d 196, 198 (4th Cir. 1982). The court also denies the request to add Roy Cooper, the governor of North Carolina, as a defendant in this action where plaintiff does not allege facts showing that he was responsible for any of the alleged constitutional violations. See Iqbal, 556 U.S. at 676.

Finally, the court observes that this is the third time it is has reviewed this action under the Rule 12(b)(6) standard, and plaintiff has been afforded two opportunities to amend his claims. The court is not inclined to allow further amendment of the operative complaint in these circumstances, to the extent such amendment would add new legal claims or defendants. It is time to move this case forward past the pleading stage.

3. Motion for preliminary injunction

Plaintiff's motion for preliminary injunction requests injunctive relief pertaining to his treatment at the Piedmont C.I. (DE 36). Where the court denies herein the motions to amend attempting to assert claims arising at the Piedmont C.I., this motion is moot as to the present action. In the event plaintiff elects to file a new action in the Middle District of North Carolina, he may file motion for preliminary injunction in his new case.

## CONCLUSION

Based on the foregoing, defendants' motions to dismiss (DE 24) is GRANTED in part and DENIED in part on the terms set forth above. The remaining claims in this action are plaintiff's

16

the First and Fourteenth Amendment claims for damages asserted against defendants in their individual capacities. The requests for injunctive or declaratory relief, and all official capacity claims, are DISMISSED as moot and alternatively on the merits. Plaintiff's RLUIPA claim is DISMISSED without prejudice. Plaintiff's motions to amend or supplement (DE 31, 32) are DENIED without prejudice to asserting the claims in a new action, and his motion for preliminary injunction (DE 36) is DISMISSED as moot. The clerk is DIRECTED to issue initial scheduling order after defendants file answer to the complaint.

    SO ORDERED, this the 27th day of August, 2024.

                                                  LOUISE W. FLANAGAN
                                                  United States District Judge

17

Case 5:23-ct-03047-FL  Document 40  Filed 08/27/24  Page 17 of 17